McIlvaine, J.
It is admitted by all parties that the boats, barges, lines, &c., used in the transportation of plaintiffs’ salt to market, should be listed and taxed as other personal property. By whom ? In whose name ? And in what district ? These are the questions in controversy.
That the Ohio River Salt Company had an existence, and management, and that it was the agency by which the plaintiffs’ salt was transported to market and sold, are undisputed facts. But in order to arrive at proper answers to the above questions, it is necessary to understand the mode and means in and by which the company was formed, organized and managed, as well as the nature and extent of its agency.
The Ohio River Salt Company, was established by the plaintiffs, and they constitute its sole membership. This is evident from the articles of association, which is the fundamental law of the company. The preamble &c. is as follows:
“ For the purpose of insuring system and unity of action in the disposition of salt, the undersigned manufacturers of salt agreed to form themselves into an association, and have adopted the following article.- :
*568 “ Article 1st. — The association shall be called the Ohio River Salt Company.
“ Art. 2d. — The business of the company shall be the shipping, transportation and sale of the salt made by the members of the association, and the company may, if deemed for its interest, buy such salt from others than members of the association.
“ Art. 3d. — Salt manufacturers may become members of this association by subscribing these articles, binding themselves to deliver all the salt made by them, and to conform to all the rules made in pursuance of the provisions of these articles, as to the delivery of salt, cooperage, and general conduct of the business.
The members of the board of directors are not members of the company, but only representatives of the plaintiffs in the management of its affairs, as appears from the 4th article of the constitution of the association, to wit:
“ Art. 4th. — The board of directors shall be chosen annually in the following manner, to wit: Each salt company being a member of this association shall elect a delegate to represent its interest and to act as a member of the board of directors. The persons so chosen shall constitute the board of directors of this association.
The board of directors was not invested with authority over the individual property or affairs of the members of the association, but only with authority to organize and regulate the company and its business in detail, to appoint agents for the company and fix their compensation, and through such agents to transact all its business, aud to do whatever in the opinion of the board was necessary to carry out most advantageously the objects of the association, as prescribed in the fifth article :
“ Art. 5th. — The board of directors shall elect one of their members as president, and shall appoint a suitable and competent person as secretary and treasurer. The board of directors shall keep a set of books and records in which they shall cause to be entered and recorded, in an appropriate and business like manner, all their appointments, rules and *569 business transactions; and these books shall at all proper times be open to the inspection of such persons or their agents as shall be interested therein. And the said board shall have power to make rules for the conduct of the business of the association, including mode and time for receiving salt, inspection of quality, mode of settling with manufacturers, and inspection of cooperage, to appoint agents, fix their compensation, and through such agents and under such rules as they may prescribe, shall have power to transact all the business of this company, and to do whatever may be necessary in the opinion of the board to carry out most advantageously the objects of this association.
“A quorum shall consist of such members as represent a majority of the manufacturing companies composing this association.”
On the 31st day of July, 1857, the delegates chosen by the members of the company met and organized the board of directors, and on the following day adopted rules and regulations for the management of the business of the company ; ■established a home office on the Ohio river, in Miegs county, Ohio, and constituted the secretary and treasurer of the company the principal or managing agent of the company, and placed him in charge of the home office.
The Ohio River Salt Company, thus constituted, bought a large number of boats, barges, lines, &c., in its own name, to be used in the shipment of plaintiffs’ salt; appointed agents at Louisville, Cincinnati, St. Louis, &c., to whom the salt was shipped, and by whom it was sold. These sub-agents made monthly returns to the managing agent at the home office. The company receives all the salt made by its members, and, after shipment and sale, divides the proceeds, less the expenses, among the members of the company pro rata according to the number of bushels of salt delivered by each to the company. All purchases and contracts are made in the name of the company. All the hands are hired, directed and paid by it. The members of the company cannot individually control the property used by the company. Notes are executed by the company in its own name, and are *570 taken and endorsed in the same way. Suits are prosecuted and defended by the company, using however the names of the plaintiffs.
Such is a substantia] description of the formation, organization, management and businness of the Ohio River Salt Company. And the question now is, whether the boats, barges, lines, &c., used by it in the management of its business have been properly and legally listed and taxed in its name, and in the district of its home office, in which its managing agent resides.
It is claimed by the plaintiffs that this property can only be listed and taxed by and in their, names respectively ; that is, that the interest of each member of the company in this property, should be listed and taxed in the name of such member, and in the taxing district where the other personal property of such member is rightfully listed and taxed. And this proposition is sought to be maintained principally upon the ground, that the Ohio River Salt Company is not a corporation or a copartnership, and therefore can not be required, under the 4th section of the tax law of April 5, 1859, as amended April 8, 1865, (S. & S. 756,) to list its property for taxation.
The 4th section provides, that “ Every person * * * shall list * * * the personal property of which he is the owner,” &c.; and that “the property * * * of every company, firm, body politic or corporate” shall be listed “by the president or principal accounting officer, partner or agent thereof. * * * Every person required to list property on behalf of others * * * shall list it in the same township in which he would be required to list, if such property was his own.”
Now, although “ company” may well be said to embrace a “ firm,” yet we think it was used in this connection in a more comprehensive sense, for there are many unincoporated bodies which are not, strictly speaking, copartnerships, that own personal property subject to taxation under the laws of this State. And, no doubt, the legislature intended to *571 embrace all such within the meaning of “ company,” though they be not “ firms ” or copartnerships.
We are not called upon, therefore, to determine whether or not the Ohio River Salt Company is a corpartnership, in the technical meaning of that term, but simply to ascertain if it be a “ company” owning property subject to taxation within the meaning of said 4th section.
Passing for a moment from the question of ownership in this company. It is claimed by the plaintiffs that if this property is subject to taxation in the name of the Ohio River Salt Company, under the provisions of the 4th section, it must nevertheless be listed, in fractional parts or shares, by the plaintiffs, or so many of them as are corporations in this State, under the provisions of the 16th section of the act of 1859 ; and thus double taxation is the result.
If it should be determined that the language used in the 16th section (which describes the property certain corporations are required to list) is broad enough to include the plaintiffs and the interest they have in this property, still, we apprehend they would be relieved from double taxation, as would a natural person, under the provisions of the ninth clause of the 3d section, S. & C. 1441, which provides as follows: “No person shall be required to include in his statement, as a part of the personal property, moneys, credits, investments in bonds, stocks, joint stock companies or otherwise, which he is required to list, any share or portion of the capital stock or property of any company or corporation which is required to list or return its capital and property for taxation in this State.”
Returning then, to the question of the ownership of these boats and barges. We admit the general rule, that part owners of boats and vessels are tenants in common, and not joint tenants; yet it does not follow that such boats and vessels cannot be acquired and held jointly, as, for instance, by a partnership, or other joint company, whether incorporated or unincorporated. And in either case, there is no doubt that the stockholders, or members of the company, have au equitable interest in the property, as it must be regarded as *572 •owned and held in trust for them by the company ; nevertheless the ownership in the company is such, that, under •our system, the property must be listed and taxed in the name of the company.
With regard to the salt delivered by each of the plaintiffs to the Ohio River Salt Company, it may be, as claimed by plaintiffs, a case of mandate, a bailment without reward, for shipment and sale, wherein no special property or interest is acquired in the subject of the mandate, by the mandatory ; and, hence, each manufacturer should list, with its ■or his other personal property the salt so owned by it or him, although in the possession and custody of the bailee.
But these questions are not before us for decision. We ■can only enquire, in this case, as to the relations of these parties to the boats, barges, lines, &c. This distinction, .however, must be observed, viz.: that there has been no delivery of this last-named property to the Ohio River'Salt Company by the plaintiffs, either jointly or separately,— neither actually nor constructively. Now, delivery is' •of the very essence of the bailment, and without which the relation of bailor and bailee does not exist. As to these boats and barges, therefore, the case of a mandate does not •arise.
It is true, that this property was purchased with the plaintiffs' money, either directly or indirectly, and, therefore, a trust results, under the circumstances, in their favor. But this is so in all cases of corporations and copartnerships, •and we can see no reason why the ownership should be regarded as a tenancy in common in one case, more than in the other ; and in the latter it is quite clear that the ownership is joint only.
This property is not purchased nor held in the names of the plaintiffs, nor is it subject to their individual control. In every sense of the word, there is a joint interest and ownership in this property as between the plaintiffs; that •each holds per my et per tout, — the legal title being in the Ohio River Salt Company, coupled with a right to use and *573 control the property for all the purposes of the trust or agency.
Nor do we see any want of capacity in the plaintiffs,, although they be corporations, to enter into this joint enterprise, there being no departure, in the line of its business, from the scope of their corporate powers, to wit, to make- and sell salt. But even if it were so, that they, as corporations, lacked power to enter into this joint enterprise, it is exceedingly doubtful whether they, in their corporate names,, should be permitted, as against the State of Ohio, to resist taxation in such form as would undoubtedly be proper, had. their powers been co-extensive with their purposes and actual dealings.
Again, it is said that this property is seldom in the State-of Ohio, and never all at the same time ; that it is as much in the State of West Virginia, where a large interest in it. is owned, as in this State; that in transporting plaintiffs’ salt to distant markets, it is chiefly used in navigating the. Tennessee, Illinois, Wabash and other rivers, not within nor; bordering upon the State of Ohio ; but that the interests-owned in this State are held by parties subject to taxation in different districts. It is therefore claimed to be unjust,- and not within the meaning and intent of our statute, that the .whole amount of the property should be taxed in one locality and subjected to its local burdens, while other localities equally interested in the property are wholly deprived, of the benefits of its taxation.
In reply to these arguments it is sufficient to say that we must be controlled in this matter by the legislative will, when expressed within the limits of legislative power. In. Perry v. Terence, 8 Ohio, 521, it was held, under the statute then in force, that steamboats owned by citizens of this State and employed in navigating waters within or bordering upon the State, were property subject, within the legislative discretion, to taxation in this State, although also -used in other waters neither within nor bordering upon the-State ; and that it was subject to taxation in the place where; the owners resided. Like statutes are still in force.
*574 We have already shown that the boats in question were owned by the Ohio River Salt Company — an association organized in this State, with its principal office in this State, at Middleport, on the Ohio river, and in the district where they were taxed, at which place the managing agent of the company also resided. It appears to us, then, that Middle-port must be regarded as the home port of these boats— the place where the owners thereof resided within the meaning of this statute.
If citizens or corporations of one taxing district invest their means and become members of a company which by law is required to list its property in another district, they have no right to complain. And if non-residents or foreign corporations become interested in property situate in this State in like manner, it is competent for the legislature to impose its burdens of .taxation upon such property in the district where it is situated and controlled.
On the whole case, although not free from difficulty, we are of opinion that the boats, barges, lines, &c., used by the Ohio River Salt Company were lawfully taxed in the name of the company in the taxing district where its home office was located, and in which its managing agent resided.
Judgment affirmed.
Welch, C. J., and White, Day and West, JJ., concurred.